Date signed March 04, 2014



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | |
|---|---|
| In Re:<br><br>Solomons One, LLC<br>     Debtor | Case No.   13-24475-TJC<br><br>Chapter   11 |
| Solomons One, LLC<br><br><br>     Plaintiff<br><br>vs.<br>V. Charles Donnelly and<br>Deborah Steffen<br><br><br>     Defendants | Adversary No.  13-00580-TJC |

## PROPOSED STATEMENT OF MATERIAL FACTS
## NOT IN DISPUTE AND PROPOSED CONCLUSIONS OF LAW
## <u>GRANTING SUMMARY JUDGMENT TO PLAINTIFF ON COUNT 1</u>

These proposed material facts not in dispute and conclusions of law are submitted to the

United States District Court for the District of Maryland pursuant to 28 U.S.C. §157(c)(1),

Federal Rule of Bankruptcy Procedure 9033 and Local Bankruptcy Rule 9033-1.

### Introduction

Plaintiff Solomons One, LLC ("Plaintiff") is a Maryland limited liability company that filed for relief under chapter 11 on August 23, 2013.  It brings this seven count complaint against defendants V. Charles Donnelly ("Donnelly") and Deborah Steffen ("Steffen" and collectively with Donnelly referred as "Defendants") who, along with four other individuals, are members of Plaintiff.[1]

The primary dispute centers on an Assignment of Contract Rights dated December 4, 2012, (the "Assignment") executed by Defendants.  The Assignment purports to assign from Plaintiff to Donnelly, in trust for the benefit of the members of Plaintiff, certain rights to construct a pier on the Patuxent River adjacent to real property partially owned by Plaintiff.  The pier rights are the subject of state court litigation against the State of Maryland and Calvert County, Maryland that seeks to establish the scope and value of those rights.  The litigation has been stayed by the bankruptcy case.  The litigation can continue once the dispute over who holds those rights, and in turn, who can pursue the litigation, is resolved here.

Plaintiff disputes that the Assignment is valid or was properly authorized by its members. In four counts of the complaint, Plaintiff seeks an order avoiding the Assignment.  Specifically, Count 1 seeks an order declaring that the Assignment was not authorized in accordance with the terms of Plaintiff's operating agreement.  Count 2 seeks to avoid the Assignment as a preference, while Counts 3 and 4 seek to avoid the Assignment as a constructive or actual fraudulent transfer, respectively.  In three counts of the complaint, Plaintiff seeks damages from one or both of Defendants for their actions arising from the execution and recording of the Assignment, namely, for legal malpractice against Donnelly (Count 5), intentional misrepresentation and fraud against Defendants (Count 6) and usurpation of corporate opportunity against Donnelly

---

[1] The remaining members of Plaintiff contend Defendants took various actions that caused them to be withdrawn as members.  This issue is not raised here and need not be resolved at this time.

(Count 7).  In Count 8, Plaintiff seeks damages against Donnelly for violating the automatic stay under 11 U.S.C. §362 based on a post-petition filing he made in the state court litigation.

Defendants filed a motion to dismiss or for summary judgment, which Plaintiff opposes, and Plaintiff filed a cross motion for summary judgment on Counts 1, 4 and 8, opposed by Defendants.  The court held a hearing on the motions on February 21, 2014.

Exigent circumstances exist with respect to the determination of whether the Assignment is valid or should be avoided.  The continuation of the state court litigation over the pier rights depends on the resolution of this issue.  If the Assignment is voided, Plaintiff will hold the pier rights and can return to state court to pursue those rights and remedies.  If, however, the Assignment is valid, then Donnelly, as trustee for the members of Plaintiff, will hold those rights and will be the proper party to proceed with that litigation.  Plaintiff is actively seeking to sell the real property which purportedly is benefited from the pier rights, and the sale process would be enhanced if the state court litigation over the pier rights is resolved timely, or at least, if the question of who holds the right to pursue the state court litigation claim is resolved.  Stated otherwise, the resolution in this court of who is the proper party to pursue the pier rights claim in the state court litigation, which in turn will allow that litigation to go forward, is of substantial importance to Plaintiff's reorganization case.  The remaining issues raised by the parties lack the same exigent concerns.

For these reasons, the court will resolve here the motions to the extent necessary to determine who holds the pier rights, and will defer the remaining issues raised in the motions for a more orderly resolution.  For the reasons that follow, the court concludes that the Assignment was not authorized in accordance with the terms of Plaintiff's operating agreement.  The court

therefore grants summary judgment to Plaintiff on Count 1 and avoids the Assignment, and denies Defendants' motion to dismiss or for summary judgment on that count.

## Jurisdiction

The court has subject matter jurisdiction over Count 1 under 28 U.S.C §1334(b) in that it is related to the bankruptcy case. *See Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007) (The test for determining whether a civil proceeding meets the "related to" standard under §1334(b) is whether the outcome of that proceeding could conceivably have any effect on the estate being administered.). The determination of whether the estate holds the pier rights will have an effect on the administration of the estate for a number of reasons, including resolving who can pursue those rights in the state court litigation. Although the Defendants originally asserted that the court lacks subject matter jurisdiction over all counts, they withdrew that contention at the hearing on the motions.

The court has the statutory authority to hear and determine Count 1 under 28 U.S.C. §157(b)(2)(A) ("matters concerning the administration of the estate") and §157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate"). However, in *Stern v. Marshall*, 564 U.S. __, 131 S.Ct. 2594, 2618 (2011), the Supreme Court held that, even though a bankruptcy court may have subject matter jurisdiction over a proceeding under 28 U.S.C. §1334(b), and statutory authority to resolve it under 28 U.S.C. §157(b), the court may nevertheless lack the constitutional authority under Article III to finally adjudicate the matter. *Id.* at 2608. As *Stern* stated, "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminister in 1789 . . . the responsibility for deciding that suit rests with Article III judges . . . ." *Id.* at 2609 (quotations omitted). The Supreme Court required, at least with respect to counterclaims on claim objections – the matter at issue in *Stern*

4

– that the action "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Id.* at 2618.

The parameters of *Stern* have not been established.  *See Albert v. Site Management, Inc.,* No. DKC 14-360, slip op. at 11-14 (D. Md. February 28, 2014) (describing the narrow and broad approaches to *Stern* and adopting the narrow approach in a case where the alleged wrongdoing concerned actions taken by defendants during the bankruptcy case in their court-approved roles as property manager and leasing agent for debtor's property).  But even under a broad reading of *Stern*, claims brought to augment the estate based on pre-petition actions and which are not intimately tied to the bankruptcy proceeding exceed the constitutional authority of a bankruptcy court.  *Id.*

Here, the Plaintiff and Donnelly consent to the court deciding Count 1.  *See* 28 U.S.C. §157)(c)(2).  Steffen does not consent, although she does not cite any authority or offer any argument in support of her position.  Count 1 raises the question of whether a pre-petition transfer by the Plaintiff was not properly authorized by the terms of its operating agreement and should be avoided.  It is a state law claim independent of bankruptcy law, and has no connection to the case other than to augment the estate.  The court concludes it lacks constitutional authority under *Stern* to decide Count 1, and therefore submits its proposed findings and conclusions for the District Court's consideration under Fed. R. Bankr. P. 9033.[2]

---

[2]  In so holding, the court does not suggest that *Stern* would prevent a bankruptcy court from rendering a final adjudication any time it is called upon to interpret corporate governance documents under state law.  For example, early in this case, the court was required to determine whether the bankruptcy petition was properly authorized under the Plaintiff's operating agreement, and no one contended the court lacked the constitutional authority to do so.  The determining factors here are that the Plaintiff seeks to avoid a pre-petition transfer based on state law rights, and the only connection to the bankruptcy case is that Plaintiff seeks control of the transferred asset to administer it as part of the estate.  *Cf. In re Erickson Retirement Communities, LLC,* 2012 WL 1999493 (D. Md. 2012) (bankruptcy courts lack constitutional authority to finally decide fraudulent conveyance claims).  *See also Albert*, Slip op. at 14 (rejecting the blanket contention that Article III prevents a bankruptcy court from entering any final order and judgment on state law claims).

## Proposed Material Facts Not In Dispute

1.  Plaintiff is a limited liability company formed in June 2005 under the laws of Maryland. The members of Plaintiff include Dr. Alfred Greenberg and Halina Greenberg (the "Greenbergs"), Christine McNelis ("McNelis"), Catherine Erickson-File ("Erickson-File"), Steffen, and Donnelly. The membership interests are as follows: the Greenbergs hold 48 1/3%; Donnelly holds 24 1/3%; Steffen holds 24%; Erickson-File holds 2 1/3%; and McNelis holds 1%.

2.  The members executed an operating agreement on June 1, 2005 (the "Operating Agreement")[3], which was drafted by Donnelly.[4]  Operating Agreement §11.3.  It states that Plaintiff was formed "to acquire, purchase, lease, sell and develop the real property located at 14538 Solomons Island Road, Solomons, Maryland [(the "Property")] . . . ." Toward that end, Plaintiff and McNelis entered into a joint venture to purchase the Property in August 2005.  Plaintiff owns a 70% fee simple interest in the Property and McNelis owns a 30% interest; Plaintiff manages the Property under the joint venture agreement.

3.  The Property is encumbered by a first deed of trust loan held by Branch Banking & Trust Company ("BB&T") in the approximate principal amount of $585,000 plus interest and other charges.  The Property also is encumbered by a second deed of trust loan held by PNC Bank, N.A. in the approximate principal amount of $150,000 plus interest and other charges.

4.  The Operating Agreement provides several provisions governing the rights of the members and the management of Plaintiff.  As pertinent here, it provides how

---

[3]  Ex. C at Docket No. 1.
[4]  From its formation through May 17, 2013, Donnelly served as counsel for Plaintiff.

management decisions will be made by a majority vote of the members or that a general

manager may be selected by majority vote:

    5.1.  **Management**.  The Members, acting jointly shall have the right to manage the business of the Company, including, but not limited to establishing and reviewing rental arrangements concerning the Property, encumbering, pledging, conveying and otherwise dealing with any or all of the Property, borrowing funds (executing confessed judgment notes in connection therewith) and operating the Company business.  Management decisions shall be approved by majority vote of the members.

    5.2.  **General Manager**.  The Members may, from time to time, by majority vote designate a person or entity (who may be a Member) to act as the General Manager of the Company.  The General Manager shall act as the direction of and authorization of the Members . . . .

Operating Agreement §5.1, §5.2.  It also describes how member meetings will be

scheduled and that a quorum constitutes at least 50% of the interest holders.

    Meeting of the Members shall be held on five (5) days' notice or on such shorter notice as may be mutually agreeable to the members, on the call of the General Manager, or the call of Members having fifty percent (50%) or more of the interest in the Company.  Notice of the time and place of each meeting shall be given in writing by the General Manager of each Member.

Operating Agreement §5.4.

5.    The Operating Agreement requires prior written consent of a majority of members before

any claim can be assigned or transferred:

    6.1.  **Restrictions on Members.**  No member without the prior written consent of the majority of all other Members, shall:

* * *

    (B) Assign, transfer, pledge, compromise or release any claim of the Company except for full payment, or arbitrate to the arbitration of any disputes or controversies involving the Company;

Operating Agreement §6.1.

6.      In March 2012 Plaintiff and Donnelly submitted a joint application to the State of Maryland and Calvert County, Maryland to construct a commercial pier.  The application was joint because Donnelly owns the adjacent property, and he has a claim to pier rights for his property as well.  In 1957, the Property and the adjacent lot (which was later subdivided) was owned by Harold L. Langley and Clair Langley.  The State of Maryland and certain property owners, including the Langleys, entered into a bargained for exchange of land and riparian rights in 1957.  Maryland granted the owners the right to construct a pier outside a proposed bulkhead in exchange of a release of their oyster leasing rights in the area in front of their properties.  Plaintiff and Donnelly relied on this 1957 right, and references in the land records of its existence, as the basis for their right to construct a commercial pier.  The State of Maryland and Calvert County Board of Commissioners denied their joint application, and the matter was appealed.

7.      On September 26, 2012, the Calvert County Board of Appeals determined that Plaintiff and Donnelly had a right to build pier.  The order issued stated:

> 2.  Exhibit F of Applicants' Exhibit 2 (letter date-stamped June 12, 1957) clearly states the following language:  "It is further understood and agreed that the grantors herein, their heirs, successors and assigns retain their right to construct, maintain or repair any pier structure they may desire to erect outside the proposed bulkhead to be built by the Commission under this contract.  The construction by the owners of such piers, however, to be subject to the approval of the U.S. [Army Corps of Engineers]."

> 3.  Exhibit F gives V. Charles Donnelly a contractual right to construct a pier subject to approval . . . the U.S. Army Corps of Engineers; and that the Zoning Officer was provided this information prior to her issuance of her June 13, 2012 letter to the applicants, on which this appeal is based.

> 4.  The Zoning Officer's decision, referenced in her June 13, 2012 letter to V. Charles Donnelly, did not recognize the contractual right of the [joint] applicants to construct a pier, and was thus in error.  The Zoning Officer's letter further errs

8

in its statement that the deeds do not support the ownership asserted in the application.

5. This Board does not make any determination as to whether current Zoning Ordinance provisions initiated by the Board of County Commissioners supersede the contractual rights referenced in Exhibit F.

Calvert County Board of Appeals Order, Case No. 12-3753 (September 26, 2012), Pl. Ex.

G at Docket No. 18.

8.   While this determination was pending, Donnelly and the other plaintiffs moved forward with state court litigation for damages.  On August 22, 2012, Donnelly, on behalf of himself and as counsel for Plaintiff and others, filed a complaint against the State and the Board of County Commissioners in the Circuit Court for Calvert County, Maryland.  The complaint included three counts for declaratory judgment, anticipatory breach of contract, and breach of contract.  The declaratory judgment count requested the Circuit Court to find that the plaintiffs are successors of the 1957 contract rights and declare the agreement enforceable against the State of Maryland.  *See* Pl. Exs. H, I at Docket No. 18.

9.   On July 12, 2013, the Circuit Court found on summary judgment that the plaintiffs had a contractual right to construct the piers, and entered its judgment.  The order provided that:

Plaintiffs have contractual rights to construct piers on the Patuxent River outside the seawall of the Right of Way designated on State Highway Administration Plat No. 17550, subject to approval of the U.S. Army Corp of Engineers;

* * *

Plaintiffs are the successors and/or assigns of the contractual rights to construct piers granted to their predecessors in title in 1957 by the State of Maryland;

* * *

9

Defendants denial of Plaintiffs Donnelly and Solomons One, LLC's joint application to construct a commercial pier is a breach of the Plaintiffs' contract rights;

Defs. Ex. G at Docket No. 15.

10.   On September 12, 2013, Maryland filed a timely notice of appeal, and on September 18, 2013, the County also filed a timely notice of appeal.  However, the issue of compensation for the breach of contract is pending with the lower court.  The litigation was stayed by the filing of Plaintiff's bankruptcy case.

11.   While the pier rights litigation was ongoing, Defendants executed the Assignment, dated December 4, 2012.  Donnelly executed the Assignment both in his capacity as a member of and counsel to Plaintiff.  Steffen executed it as a member of Plaintiff, and also as "Operating Manager," although the remaining members dispute she served in that capacity.  It assigns "contract rights under the provisions of the contract between a predecessor property owner and the State of Maryland (SHA) in 1957" from Plaintiff to Donnelly, as assignee.  Assignment §1.1.  It states that the Assignment includes the "litigation rights" that are necessary to enforce the pier rights.  *Id*. at 1 and §1.1.[5]  As assignee, Donnelly agreed

to hold these contract pier rights in Trust, as Trustee, for [Donnelly, Steffen, McNelis, Erickson-File, and the Greenbergs], individually, and to divide the net proceeds from any recovery, less expenses to said individuals in proportion to their interests in the LLC . . . .

---

[5] Section §1.1 states

[T]he enforcement of these contract pier rights requires litigation against the State of Maryland and Calvert County because of their denial of the joint pier application submitted by V. Charles Donnelly and Solomons One, LLC for the construction of a commercial pier on the Patuxent River; and

Whereas, the Assignor retained Assignee to protect and litigate its contract rights and desires to protect them, to see the successful conclusion of the joint venture entered into for the mutual benefit of its members, to obtain a release of a debt owed to the Assignee for legal services independently created for development issues for the property[.]

Assignment §1.4.

12.    Issues of fact exist as to whom approved the Assignment.  Donnelly and Steffen state in affidavits that the Greenbergs (or at least Alfred Greenberg) approved the Assignment in a phone call some time in 2012.  In their affidavits, the Greenbergs deny that they authorized the Assignment or the transfer made by its terms.  This dispute is not resolvable on summary judgment.

13.    Insofar as the record before this court establishes, however, several matter of material fact are not in dispute.  The Assignment was executed without calling or holding a member meeting.  Defendants did not advise or inform McNelis or Erickson-File that the Assignment was under consideration, that they intended to execute the Assignment, or that it had been executed.  The input of McNelis or Erickson-File simply was not obtained.  Erickson-File Aff. at ¶5-7; McNelis Aff. at ¶6-8.[6]

14.    Donnelly and Steffen did not show a draft of the Assignment to any member before they executed it.  They did not provide a copy of the Assignment to any member after they executed it, even though Donnelly, as counsel to Plaintiff, sent numerous litigation-related documents to the Greenbergs after the date of the Assignment.  *See* Defs. Exs. Z, AA, BB, CC, DD at Docket No. 15.  The first time the Greenbergs saw a copy of the Assignment was after they discovered it had been recorded in the land records of Calvert County, Maryland on May 17, 2013.

15.    Plaintiff received no payment or value for the Assignment.

16.    By December 4, 2012, Plaintiff had ceased paying the BB&T first deed of trust loan and either had, or was about to, ceased paying the PNC second deed of trust loan.

---

[6]  Erickson-File's affidavit was submitted as Ex. C to Docket No. 18, and McNelis's affidavit was submitted as Ex. D to Docket No. 18.

17.    Plaintiff points to the timing of Donnelly's recording of the Assignment as one of many

questionable actions taken by him.  On May 3, 2013, a Notice of Meeting of Members of

Solomons One, LLC was sent to all members informing them of a meeting to be held on

May 17, 2013.[7]  The stated purpose of the meeting was to appoint new counsel to

represent Plaintiff in the pier rights litigation, and to terminate Donnelly's representation

of Plaintiff.  Donnelly recorded the Assignment the day before the meeting.  At the

meeting, his representation of Plaintiff was terminated.  Under the Assignment, not only

is Donnelly placed in control of the pier rights litigation, he also is expressly assured of

receiving the first proceeds from that litigation to apply to his fees.  *See* Assignment

§§1.4 – 1.4.4.  Donnelly was present at the member meeting and he voted against his

termination.

18.    Upon learning of the recording of the Assignment, the Greenbergs made a formal demand

to Donnelly by counsel to withdraw the recorded Assignment.

**Proposed Conclusions of Law**

19.    Under Fed. R. Civ. P. 56(c), applicable here by Fed. R. Bankr. P. 7056, summary

judgment is appropriate only where "there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *In re French*, 499 F.3d

345, 351-352 (4th Cir. 2007).  The court must consider all evidence in a light most

favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 255.

In evaluating a summary judgment motion, a court "must consider whether a
reasonable jury could find in favor of the non-moving party, taking all inferences

---

[7]  The notice to terminate Donnelly was sent after he filed a partition action with the Circuit Court for Calvert
County, Maryland on May 2, 2013.  This action sought sale in lieu of partition with the appointment of a trustee.
The Greenbergs, Erickson-File, and McNelis state they did not authorize the filing of the partition action.

to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex Express Corp.*, 190 F.3d at 633. In so doing, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...."). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir.2004).

*In re French*, 499 F.3d 345, 351–352 (4th Cir. 2007).

20.    When a party has submitted sufficient evidence to support its request for summary judgment the burden shifts to the nonmoving party to show that there are genuine issues of material fact. *See Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks and emphasis omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Rule 56(c)(1) provides that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion" by citing to supporting documents contained in the record.[8] Ultimately, "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (footnote omitted).

---

[8] Rule 56(c)(1) provides that "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answer or other materials" can be used to support a party's contention that a fact is genuinely disputed.

21.     Plaintiff's request for summary judgment on Count 1 is straightforward.  It seeks a determination that the Assignment was unauthorized under the Operating Agreement and is voidable.[9]  Specifically, Plaintiff contends that the Assignment constituted an "assign[ment or] transfer [of a] . . . claim" that required the written consent of the majority of members under §6.1(B) of the Operating Agreement.  Plaintiff contends it is entitled to summary judgment because there is no dispute that written consent was not obtained.  The court agrees and concludes that the under the terms of the Operating Agreement, the Assignment was not properly authorized.

22.     As a Maryland limited liability company, Plaintiff is governed by the terms of its Operating Agreement and state law.  Operating Agreement; Md. Code Ann., Corps. & Ass'ns §4A-101(k) and §4A-402[10] (The operating agreement of a limited liability company governs the management and the conduct of its business.).

23.     Defendants do not dispute that, if the Assignment was not properly authorized in accordance with the Operating Agreement, it should be avoided.  *See al*so Md. Code §4A-401(c) (Any act that was not authorized by a limited liability company and that was not done to carry on the usual business of the limited liability company is not binding on it.).

24.     Here, the pertinent provision of the Operating Agreement provides that members are restricted from assigning a "claim" of Plaintiff without prior written consent of the

---

[9]  Plaintiff brings Count 1 under the Declaratory Judgment Act, 28 U.S.C. §2201, which provides in pertinent part:
         In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under § 7428 of the Internal Revenue Code of 1986, a proceeding under § 505 or § 1146 of Title 11 . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought[.]
[10]  Hereinafter, all references to Md. Code Ann., Corps. & Ass'ns §1-101 (2013), *et. seq.*, will be referred as "Md. Code".

majority of all other members and other than for full payment.  Operating Agreement
§6.1(B).

25.    The term "claim" is not defined in the Operating Agreement or in the Limited Liability

Act.  When faced with contract interpretation, courts generally consider the "customary,

ordinary, and accepted meaning" of the terms used.  *Fister ex rel Estate of Fister v.*

*Allstate Life Ins. Co.*, 783 A.2d 194, 210 (Md. 2001).  The term "claim" is defined to

include the "assertion of an existing right; any right to payment or to an equitable

remedy, even if contingent or provisional."  Black's Law Dictionary 264 (8th ed. 2004).

26.    Using this standard definition, the Assignment purports to assign a claim.  In the

"Wherefore" provisions, the Assignment states that the property owner was granted the

"right to construct any pier structure it desired . . . ."  Assignment at 1.  It further states

that "the parties understand that the enforcement of these contract pier rights requires

litigation against the State of Maryland and Calvert County . . . " and that Plaintiff, as

assignor, retained Donnelly, as assignee, "to protect and litigate its contract rights . . . ."

*Id*.  The section describing the Assignment's terms expressly states that the transfer

includes the right to "the enforcement of these contract rights against the State of

Maryland, Calvert County and to any compensation or award obtained . . . in the current

litigation or negotiation ordered by a court or agency or obtained by settlement with the

State and County . . . ."  *Id.* at §1.1.

27.    Thus, by the terms of the Assignment itself, the pier rights "requires litigation" against

the State and County for enforcement, and those litigation rights and benefits are

expressly assigned.  The court concludes that a right that "requires litigation" for its

enforcement and that is the subject of current litigation falls within the meaning of "claim" in §6.1(B) of the Operating Agreement.

28.    Indeed, in the Assignment, Donnelly included a provision for the distribution to the members of the net proceeds from the litigation (*i.e.* the recovery on the claim), but did not include a provision for the distribution to the members of the pier rights themselves in the event the Circuit Court upheld Plaintiff's claim to those rights, thus supporting the conclusion that a "claim" was assigned.

29.    Accordingly, because no written consent was obtained by a majority of the members of Plaintiff, the Assignment was not properly authorized under §6.1(B) of the Operating Agreement, and Defendants do not dispute that under Md. Code §4A-401(c) the Assignment is not binding on Plaintiff.

30.    This case highlights the need for the written consent requirement in §6.1(B) of the Operating Agreement.  As stated above, Defendants and Greenberg have submitted contradictory affidavits.  Defendants contend that Greenberg agreed to the Assignment some time in 2012, and that, when the Greenbergs' 48 1/3% interest is considered with Defendants' member interests, the Assignment was approved by members holding 96 2/3% of the interests.  The Greenbergs each have submitted an affidavit in which they state in no uncertain terms that they never authorized the Assignment or the transfer or actions effected by its terms.

31.    These competing affidavits ordinarily would raise issues of fact that would need to be resolved at trial.  Section 6.1(B) obviates such disputes.  *See* Operating Agreement §6.1(B).  By requiring the written consent of a majority of members prior to taking actions such as executing the Assignment, §6.1(B) of the Operating Agreement does not

16

allow room for oral misunderstandings or misrepresentations.  A transfer is either approved by "the prior written consent of the majority of the Members" or it is not allowed.

32.  Defendants contend the Assignment was a distribution to members, not an assignment under §6.1(B), and it was the usual practice of Plaintiff and its members to take actions informally.  This statement is not supported by the affidavit of either Defendant and therefore does not prevent summary judgment.  Moreover, in response, Plaintiff's counsel stated, without challenge, that Plaintiff had not previously assigned rights to anyone, so there was no such usual practice in this regard.

33.  Further, Defendants' own affidavits and exhibits contradict the factual contention that it was Plaintiff's usual course of business to approve such an extraordinary action without either a meeting of all members or at least requiring the informal vote of all members, neither of which was done in connection with the Assignment.  Defendants' affidavits describe four actions taken by Plaintiff outside the ordinary course of business: (1) filing the state court action; (2) retaining Donnelly for the state court lawsuit; (3) terminating Donnelly as counsel to Plaintiff; and (4) filing the chapter 11 petition.  Donnelly Aff. at ¶¶14, 22; Steffen Aff. at ¶¶9, 10.[11]  The first two actions were taken after approval by all members, Donnelly Aff. at ¶14, while the latter two actions were taken on vote at a formal meeting.  *Id*. at ¶22; Steffen Aff. at ¶¶9, 10.

34.  Further, even with respect to day-to-day operations of Plaintiff, Steffen's affidavit expressly states that "[t]his was done after member approval or their comments of do what you think is best."  Steffen Aff. at ¶7.  And Exhibit W, submitted by Defendants, is

---

[11]  Donnelly's affidavit was submitted as Ex. F at Docket No. 15, and Steffen's affidavit was submitted as Ex. I at Docket No. 15.

a series of emails that were circulated at the time Plaintiff decided to file the pier rights action.  They show that the matter was discussed among all members of Plaintiff.  *See* Ex. W (email messages) at Docket No. 15.

35.     Nothing in the record supports the argument that it was the usual practice of Plaintiff to take such an extraordinary action as executing the Assignment without even notifying two of the members.  The court concludes that no reasonable fact finder could conclude that it was consistent with the usual practice of Plaintiff to make the Assignment without at least notifying and obtaining the view of all members.

36.     Finally, leaving aside the deficient approval process for the Assignment, the record does not support the contention that a disputed material fact exists that the Assignment was intended to be a distribution to the members under the terms of the Operating Agreement.

The Operating Agreement provides that

> If any assets of the Company are distributed to the Members in kind, those assets shall be valued on the basis of their fair market value and any member entitled to any interest in those assets shall receive that Interest as a tenant-in-common with all other Members so entitled.  The fair market value of the assets distributed in kind shall be determined by an independent appraiser selected by the members.  Based upon the fair market value, the Profit or Loss for each unsold asset shall be determined as if that asset had been sold at its fair market value, and the Profit or Loss shall be allocated as provided in Section 8.3 and shall be properly credited or charged to the Capital Accounts of the Members prior to the dissolution of the assets in liquidation pursuant to Section 8.4.

Operating Agreement §4.5(B).  Nothing in the record suggests this procedure was discussed among any members when Defendants executed the Assignment.  No fair market value was obtained and no independent appraiser was retained.[12]  No allocations

---

[12]  Donnelly argues the pier rights had no value in December 2012 and therefore an appraisal was unnecessary. Aside from the obvious point that the Circuit Court has determined on summary judgment that the pier rights should be enforced, that determination simply was not Donnelly's to make unilaterally under the Operating Agreement.

were made to the members' accounts as a result of the Assignment.  Thus, Defendants'

contention that they acted consistently with the usual practice of Plaintiff in executing the

Assignment and that the Assignment was a distribution to members is unavailing.

### Rule 54(b) Certification

37.   Fed. R. Civ. P. 54(b), made applicable here by Fed. R. Bankr. P. 7054, provides that a

court may enter final judgment on fewer than all claims in a multi-claim action if the

court expressly determines that there is no just reason for delay, thus allowing an

immediate appeal on the resolved claims.

38.   To effectuate a Rule 54(b) certification, the court must first determine whether the

judgment is "final in the sense that it is an ultimate disposition of an individual claim

entered in the course of a multiple claims action."  *MCI Constructors, LLC v. City of*

*Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010) (quoting *Curtis-Wright Corp. v. General*

*Electric Co*., 446 U.S. 1, 7 (1980) (internal quotations omitted)).

39.   The court must then determine whether there is no just reason for the delay in the entry of

judgment.  *Braswell Shipyards, Inc. v. Beazer East, Inc*. 2 F.3d 1331, 1335 (4th Cir.

1993).  In determining whether there is no just reason for delay in the entry of judgment,

courts have considered the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the
> possibility that the need for review might or might not be mooted by future
> developments in the district court; (3) the possibility that the reviewing court
> might be obliged to consider the same issue a second time; (4) the presence or
> absence of a claim or counterclaim which could result in a set-off against the
> judgment sought to be made final; (5) miscellaneous factors such as delay,
> economic and solvency considerations, shortening the time of trial, frivolity of
> competing claims, expense and the like.

*Id.* at 1335-36 (citing *Allis-Chalmers Corp. v. Philadelphia Electric Co*. 521 F.2d 360, 364 (3rd Cir. 1975)).  Where the court is persuaded that Rule 54(b) certification is appropriate, the court states those findings of fact on the record or in its order.  *Id*. at 1336.

40.    The court hereby makes the Rule 54(b) certification.  The determination above – that the Assignment was not properly approved in accordance with the Operating Agreement and therefore should be avoided – is a final resolution of Count 1.  As stated by Plaintiff at the hearing, it provides complete relief and nothing remains to be adjudicated on Count 1.

41.    Further, a review of the five factors set forth in *Braswell Shipyards* leads to the conclusion that there is no just reason for delay of final judgment.  First, the relationship between Count 1 and the remaining counts is fairly remote.  Count 1 implicates the straightforward application of the language of the Operating Agreement to the execution of the Assignment.  As a result of the court's ruling on Count 1, the court will dismiss Counts 2, 3 and 4 as moot, because those counts sought the same relief that is being granted here.  Further, as presented to the court, Count 1 does not put at issue the intentions or conduct of Defendants, while Counts 5 through 8 center on those matters.  Defendants' knowledge or intentions are not addressed or resolved by this ruling; Defendants conduct is implicated only to the extent of the undisputed fact that no written consent was obtained and, to a lesser extent, the conclusion that no material issue of fact is in dispute that Defendants did not act consistently with the usual practice of Plaintiff in executing the Assignment.  Accordingly, further proceedings in this court will not moot the determination made on Count 1, nor will a reviewing court be called upon to review

the determination made that the Operating Agreement required the written consent of a majority of members to approve the Assignment.

42.    Moreover, there are no counterclaims asserted that could result in a set-off, nor is the court awarding any money judgment or damages under Count 1. Finally, the need for a prompt resolution of the issue of who holds the pier rights – and therefore who can proceed as the party in interest in the state court litigation – weighs heavily in favor of certification.

## Conclusion

For the foregoing reasons the court will enter an order granting summary judgment to Plaintiff on Count 1, and dismissing without prejudice Counts 2, 3 and 4 as moot. The court also certifies under Fed. R. Civ. P. 54(b) that there is no just reason for delaying the entry of judgment on Count 1.

## End of Proposed Statement of Material Facts Not In Dispute and Proposed Conclusions of Law

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| In Re: | |
| Solomons One, LLC | Case No.         13-24475-TJC |
| Debtor | Chapter         11 |
| Solomons One, LLC | |
| Plaintiff | Adversary No.    13-00580 |
| vs. | Civil Action No.    _____ |
| V. Charles Donnelly and Deborah Steffen | |
| Defendants | |

**<u>ORDER</u>**

The United States Bankruptcy Court for the District of Maryland entered Proposed

Statement of Material Facts not in Dispute and Proposed Conclusions of Law Granting Summary

Judgment to Plaintiff on Count 1, on March 4, 2014, pursuant to 28 U.S.C. §157(c)(1).  The

court has considered these proposed findings and conclusions, as well as any timely objections

thereto.

It is, by the United States District Court for the District of Maryland, hereby

ORDERED, that summary judgment is granted to Plaintiff Solomons One, LLC, on Count 1, and the Assignment of Contract Rights dated December 4, 2012 (the "Assignment") executed by Defendants V. Charles Donnelly and Deborah Steffen is hereby declared to be avoided and of no further force or effect; and it is further

ORDERED, that Count 2 (which seeks to avoid the Assignment as a preference), Count 3 (which seeks to avoid the Assignment as a constructive fraudulent conveyance), and Count 4 (which seeks to avoid the Assignment as an actual fraudulent conveyance) are hereby dismissed without prejudice as moot; and it is further

ORDERED, that the court certifies under Fed. R. Civ. P. 54(b) that there is no just reason for delaying the entry of judgment on Count 1.


This proposed Order is lodged
with the United States District Court
for the District of Maryland pursuant to
28 U.S.C. §157(c)(1).

_____/s/_____

THOMAS J. CATLIOTA
United States Bankruptcy Judge
for the District of Maryland

Date:  March 4, 2014

cc:      Plaintiff
         Plaintiff's counsel
         Defendants
         Defendants' counsel
         United States Trustee


**End of Order**

2