IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 APR 12  P 4: 59

CLERK'S OFFICE
AT GREENBELT
BY_____ DEPUTY

| | |
|---|---|
| SOLOMONS ONE, LLC, | * |
| Debtor-Appellee, | * |
| v. | *   Civil No. **PJM 15-1057** |
| V. CHARLES DONNELLY, *pro se* | * |
| Appellant. | * |

## MEMORANDUM OPINION

This case is on appeal from an Order of the United States Bankruptcy Court for this District. *See Solomons One, LLC v. Donnelly, et al. (In re Solomons One, LLC)*, Ch. 11 Case No. 13-24475, Adv. No. 13-580 (Bankr. D. Md.). Debtor-Appellee Solomons One, LLC (Solomons One) filed a Complaint against Appellant V. Charles Donnelly (Donnelly), seeking in part to recover damages from Donnelly for willful violations of the automatic bankruptcy stay. The Bankruptcy Court entered a Memorandum and Order granting summary judgment to Solomons One on this claim, then held a separate one-day bench trial on the calculation of appropriate damages – i.e., for attorney's fees and punitive damages. After the one-day trial, the Bankruptcy Court entered a Memorandum and Order concluding that Solomons One was entitled to $40,092.00 in attorney's fees plus interest, but denying its request for punitive damages. Donnelly has appealed the Bankruptcy Court's Judgment awarding $40,092.00 to Solomons One in attorney's fees. For the reasons that follow, the decision of the Bankruptcy Court is **AFFIRMED**.

1

## I.

Solomons One is a limited liability company formed in 2005 under Maryland law. App. 572, ECF No. 8-1 – 8-14. It has six members: Dr. Alfred Greenberg and Halina Greenberg (the Greenbergs), Christine McNelis (McNelis), Catherine Erickson-File (Erickson-File), Deborah Steffen (Steffen) and Donnelly. *Id.* It was formed to acquire, purchase, lease, sell, and develop property located at 14538 Solomons Island Road, in Solomons One, Maryland (the Property) in order to build a commercial pier. *Id.* 1038. In August 2005, Solomons One entered into a joint venture agreement with McNelis and purchased the Property. *Id.*

In March 2012, Solomons One and Donnelly, who owns the land adjacent to the Property, submitted a joint application to the State of Maryland and Calvert County, Maryland, to build a commercial pier. *Id.* 1040. At the time, Donnelly, a Maryland attorney, was also serving as counsel for Solomons One. *Id.* 94-95. The State of Maryland and the Calvert County Board of Commissioners denied the application. *Id.* 95. Solomons One appealed to the Calvert County Board of Appeals.[1] *Id.*

### A. The Pier Rights Litigation

While the appeal of the application decision was pending before the Calvert County Board of Appeals, Solomons One, Donnelly (who was still serving as Solomons One's counsel), and other plaintiffs commenced litigation in the Circuit Court for Calvert County, asserting the existence of their rights to build the commercial pier (the Pier Rights Litigation). *Id.* 96. On July 12, 2013, after a hearing on the plaintiffs' motion for summary judgment in the Pier Rights Litigation, the Circuit Court entered judgment in favor of Solomons One, Donnelly, and the other plaintiffs, declaring that they had contractual rights to construct piers on the Patuxent River

---

[1] On September 26, 2012, the Calvert County Board of Appeals determined that Solomons One and Donnelly had a contractual right to build a pier, thus reversing the decision of the State and the County. App. 95-96.

2

and that the State and Calvert County's denial of their joint application constituted a breach of their contractual rights. *Id.* 70-73.

At some point during the Pier Rights Litigation, Donnelly and Steffen executed an assignment dated December 4, 2012 (the Assignment). *Id.* 485-88; 572. The Assignment purportedly assigned certain contract and pier rights from Solomons One to Donnelly, who not only drafted the Assignment, but executed it both in his capacity as member of Solomons One and as its attorney. *Id.* 485-88. The Assignment also transferred to Donnelly, as trustee, the litigation rights necessary to enforce the contract and pier rights. *Id.* The Assignment further provided that Donnelly was expressly assured of receiving the first proceeds from the Pier Rights Litigation to apply toward his fees. *Id.*

In late April or early May 2013, members of Solomons One other than Donnelly and Steffen discovered the Assignment. On May 17, 2013, all the members of Solomons One (including Donnelly) held a meeting, and by a majority vote terminated Donnelly as Solomons One's attorney. *Id.* 97; 572. The day prior to the meeting, however, Donnelly had recorded the Assignment without disclosing as such to the other members. *Id.* 98.

At another meeting held on August 21, 2013, a majority of the Solomons One Board voted to file a Chapter 11 bankruptcy petition. *Id.* 573. Donnelly attended the meeting and voted against the action, but on August 23, 2013, Solomons One filed a Chapter 11 Petition in the Bankruptcy Court. *Id.* 573.

Despite the fact that the bankruptcy petition had been filed, on September 3, 2013 Donnelly filed a Notice to Substitute V. Charles Donnelly [himself], Trustee, as the Proper Party Plaintiff instead of Solomons One, LLC (the Substitution Notice) in the Pier Rights Litigation. *Id.* 441-46, 573. The Substitution Notice sought to effectively remove Solomons One, LLC – by

3

now a Chapter 11 debtor – from the Pier Rights Litigation and to insert Donnelly in its place. *Id.* On September 13, 2013, Solomons One's new counsel, attorneys from the law firm of Whiteford, Taylor & Preston, LLP, informed Donnelly by letter that the Substitution Notice and underlying Assignment constituted violations of the automatic bankruptcy stay and requested his cooperation. *Id.* 573. Despite their efforts, Donnelly failed to withdraw the Notice of Substitution. *Id.*

In response, on September 30, 2013, Solomons One filed a Motion to Strike Appearance of V. Charles Donnelly as Counsel for Plaintiff Solomons One, LLC and as Substituted Party in Place of Solomons One, LLC (the Motion to Strike Donnelly's Appearance). *Id.* 447-88, 573. On September 30, 2013, Donnelly filed an opposition to the Motion to Strike Donnelly's Appearance and filed his own motion to strike Whiteford, Taylor & Preston LLP as Solomons One's counsel in the Pier Rights Litigation (the Motion to Strike Whiteford, Taylor's Appearance). *Id.* 573. Solomons One filed a Combined Reply and Opposition on October 11, 2013. *Id.* The Circuit Court held a hearing on the Motion to Strike Donnelly's Appearance and various other pleadings on October 16, 2013. *Id.* Donnelly attended the hearing and argued that the Assignment was valid and that he was still proper counsel for Solomons One. *Id.*

### B. The Bankruptcy Adversary Proceeding

On October 4, 2013, Solomons One filed a Complaint against Donnelly and Solomons One Board Member Steffen, initiating the Adversary Proceeding from which this Appeal arises. *Id.* 18-84. In its Complaint, Solomons One sought, among other things, to recover damages from Donnelly and Steffen for willful violations of the automatic bankruptcy stay, Count 8 of the Adversary Complaint (Count 8). *Id.* 35-36. In the course of the Adversary Proceeding, Donnelly and Steffen filed a Motion to Dismiss and Solomons One filed an Opposition to the Motion to

4

Dismiss and a Motion for Partial Summary Judgment on Count 8. *Id.* 1-17. The parties thereafter filed various responses. *Id.*

On July 7, 2014, the Bankruptcy Court entered a Memorandum and Order Granting Partial Summary Judgment on Count 8 to Solomons One. *Id.* 92-103. In the Memorandum, the Bankruptcy Court concluded that Donnelly had willfully violated the automatic bankruptcy stay when he filed the Notice. *Id.* at 101-02. In particular, the Bankruptcy Court concluded that "Donnelly knew of the bankruptcy filing when he filed the Substitution Notice" and "that the filing of the Notice [was] an intentional act." *Id.* at 100. Further, the Bankruptcy Court determined that, because certain "filings and arguments have not been put in the record," it would set in for trial the issue of whether Donnelly further violated the automatic bankruptcy stay by opposing the Motion to Strike and by appearing and arguing at the hearing thereon. *Id.* 102. The Bankruptcy Court also set for determination the issue of damages, including attorney's fees and punitive damages. *Id.* 102-03.

The Bankruptcy Court held a one-day trial on these remaining issues on December 10, 2014. *Id.* 296-410. At trial and over Donnelly's objection, the Bankruptcy Court admitted into evidence the time records of Solomons One's counsel for time expended related to Donnelly's violations of the automatic stay. *Id.* 331-33. The Bankruptcy Court also granted Solomons One's request for time to submit a supplemental bill to include time expended on the pre-trial and trial matters in the adversary proceeding. *Id.* 380-81. Accordingly, on December 15, 2014, Solomons One filed a Line Filing (i) Updated Time Records of Whiteford, Taylor & Preston, LLP, as Counsel for the Debtor, for Services Rendered and Expenses Incurred Defending V. Charles Donnelly's Violations of the Automatic Stay and Prosecuting Count Eight of the Adversary Complaint with Respect Thereto; and (ii) the Declaration of Susan Jaffe Roberts in Support of an

5

Award of Damages on Count Eight of the Adversary Complaint (Roberts Declaration). *Id.* 521-39. Due to an error in the time records submitted, Solomons One filed a corrected final accounting of the amount of expenses on December 16, 2014 (December 16 Filing). *Id.* 545-60. Shortly thereafter, Donnelly moved to strike the Roberts Declaration and the December 16 Filing (Motion to Strike the Roberts Declaration and December 16 Filing). *Id.* 563-69.

On March 27, 2015, the Bankruptcy Court entered a Memorandum and Order resolving the remaining issue of damages. *Id.* 570-85. First, it reasoned that "it need not resolve the[] questions" of "whether [Donnelly] violated the automatic stay by opposing the Motion to Strike [Donnelly's Appearance] or by participating in the hearing on that motion." *Id.* 574. Given that the Bankruptcy Court had previously "concluded that [Donnelly] willfully violated the automatic stay by filing the Substitution Notice," all other expenses incurred as a result of that Substitution should be included in the attorney's fees calculation because the expenses for these tasks were "necessary to rectify the harm caused by [Donnelly's] violation of the stay." *Id.* 574-75. The Court therefore concluded that Solomons One was "entitled to an award of reasonable attorneys' fees for preparing and sending the September 13, 2013 letter, filing the Motion to Strike, filing the Combined Reply and Opposition, attending the October 16, 2013 hearing in the Circuit Court, and pursuing its recovery of fees and damages in Count 8 of this proceeding." *Id.* 575.

Second, the Bankruptcy Court addressed the issue of damages. As for the attorney's fees, the Bankruptcy Court noted that it had to determine that those costs had been "reasonably incurred as a result of the violation of the automatic stay." *Id.* 577 (quoting *In re Grine*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010)). Applying the lodestar method, the Bankruptcy Court "scrutiniz[ed] the billing entries" of Solomons One's counsel and "comb[ed] through the chronological entries" to determine the "fees [that] are reasonable" for certain categories of tasks

6

(e.g., researching and preparing the Motion to Strike, preparing for and attending the October 16, 2013 hearing on the Motion to Strike and related pleadings, researching and preparing for Solomons One's Motion for Partial Summary Judgment on Count 8 for the stay violations, etc.). *Id.* 579-82. The Bankruptcy Court determined that "the services performed by counsel were reasonably incurred in rectifying Donnelly's violation of the automatic stay" and awarded Solomons One $40,092.00 in attorney's fees. *Id.* 582. The Bankruptcy Court did not grant Solomons One's request for punitive damages.[2] *Id.* 582-83.

Finally, the Bankruptcy Court addressed Donnelly's Motion to Strike the Roberts Declaration and December 16 Filing. The Bankruptcy Court noted that Solomons One had submitted its amended final bill and the affidavit of Susan Jaffe Roberts with its approval. *Id.* 584. The Bankruptcy Court thus decided not to strike the affidavit or the supplemental bills filed because Donnelly "had ample opportunity to raise any objection to the supplemental information or ask for a further hearing, but has not done so."[3] *Id.* 584.

On March 30, 2015, the Bankruptcy Court entered a Judgment in favor of Solomons One and against Donnelly in the amount of $40,092.00 plus interest at the federal rate per annum (the Judgment). *Id.* 586-87. On April 13, 2015, this Appeal followed. ECF No. 1.

## II.

On appeal, Donnelly does not contest the Bankruptcy Court's conclusion that he willfully violated the automatic stay. Rather, he argues that (1) the Bankruptcy Court abused its discretion in its determination of "the reasonableness and/or necessity of the [attorney's] fees [award]," Appellant's Br. 7, (2) that it "abused its discretion when it relied upon pleadings filed in the case,

---

[2] The Bankruptcy Court explained, however, that the punitive damages claim was "certainly not without merit," given that Donnelly's actions were "highly questionable." App. 582-83.

[3] In a later ruling on Donnelly's Motion to Stay Judgment Pending Appeal, the Bankruptcy Court also noted that, with respect to the Roberts Declaration, "The simple fact is that the court did not take into consideration any material information from the affidavit in determining the award." App. 1460.

7

but not entered into the record" – i.e., the Roberts Declaration – to assess the reasonableness of the attorney's fee request, *id.*, and (3) that it erred in relying on a pretrial memorandum filed by Solomons One in awarding Solomons One $40,092.00, *id.* 1.

In response, Solomons One asserts that the Bankruptcy Court properly exercised its discretion in concluding that both the hourly rates and the hours spent to address Donnelly's stay violations were fair and reasonable. Appellee's Br. 7. Further, Solomons One contends that the post-trial filing of the Roberts Declaration was explicitly authorized by the Bankruptcy Court without any objection by Donnelly at trial, and in any event, consideration of the Roberts Declaration was not an abuse of discretion. *Id.* 7-8. And finally, Solomons One asserts that Donnelly waived the issue of whether the Bankruptcy Court properly considered the pretrial memorandum in its attorney's fees calculation by failing to support this contention with any argument. *Id.* 34-35.

### III.

This Court has jurisdiction over this Appeal pursuant to 28 U.S.C. § 158(a)(1).[4]

An appellate court "review[s] an award of attorneys' fees for abuse of discretion." *Jones v. Southpeak Interactive Corp. of Delaware*, 777 F.3d 658, 675 (4th Cir. 2015) (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). In doing so, an appellate court

---

[4] As noted in Part I, *supra*, Solomons One initially field an eight-count Complaint against Donnelly and Steffen related to their conduct in the Pier Rights Litigation. On March 4, 2014, the Bankruptcy Court granted summary judgment to Solomons One on Count 1 and dismissed Counts 2, 3, and 4 of the Complaint (without prejudice) as moot. App. 1054-55. On July 7, 2014, the Bankruptcy Court entered a Memorandum and Order abstaining from hearing Counts 5, 6, and 7 of the Complaint. *Id.* 85-91. The Bankruptcy Court's subsequent entry of the Order Granting Partial Summary Judgment on Count 8, which concerned Donnelly's violations of the automatic stay, *id.* 92-103, therefore "end[ed] the litigation on the merits and le[ft] nothing for the court to do but execute the judgment." *United States v. Modanlo*, 762 F.3d 403, 409 (4th Cir. 2014) (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988)). On April 13, 2015, the Bankruptcy Court entered its Judgment in favor of Solomons One, awarding attorney's fees in the amount of $40,092.00, App. 586-87, which Donnelly appeals. This Court therefore has jurisdiction to hear Donnelly's Appeal under 28 U.S.C. § 158(a)(1), which provides that "district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees" of bankruptcy courts.

must be mindful that its "review of the record, no matter how careful, cannot substitute for the [trial court's] close and intimate knowledge of the efforts expended and the value of the services rendered." *Jones*, 777 F.3d at 675 (internal citations and quotations omitted). As such, an appellate court may "only reverse such an award if the [trial court] is clearly wrong or has committed an error of law." *Id.* (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). As the Fourth Circuit has explained, this abuse of discretion standard of review is "sharply circumscribed." *Robinson*, 560 F.3d at 243; *see also Best Med. Int'l, Inc. v. Eckert & Ziegler Nuclitec GmbH*, 565 F. App'x 232, 236 (4th Cir. 2014) (stating that the standard of review of awards of attorney's fees is "exceptionally deferential").

To the extent that an appellate court must review the decision of a trial court to consider new or supplemental evidence, it is well-established that "[i]t is within the [trial court's] discretion to reopen a case to admit new evidence." *Levy v. Lexington Cty., S.C.*, 589 F.3d 708, 714 (4th Cir. 2009). Such a decision is therefore reviewed for abuse of discretion, and the appellate court considers: "whether (1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence earlier is bona fide; and (3) reopening will cause undue prejudice to the nonmoving party." *Id.* (citing *Rivera-Flores v. Puerto Rico Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995)).

### IV.

The Court addresses the arguments advanced by Donnelly.

### A.

The first issue is whether the Bankruptcy Court, after hearing evidence in a one-day bench trial, abused its discretion in its analysis of reasonable attorney's fees incurred as a result

9

of Donnelly's willful violations of the automatic stay. The Court concludes that the Bankruptcy Court did not abuse its discretion.

It is "well established in the Fourth Circuit that attorney's fees are evaluated by the lodestar method, under which various factors are applied to determine the attorney's reasonable rate and the reasonable number of hours." *Boleman Law Firm, P.C. v. United State Tr.*, 355 B.R. 548, 552 (E.D. Va. 2006) (citing *EEOC v. Serv. News Co.*, 898 F.2d 958 (4th Cir. 1990)). In applying this method, a court must consider twelve factors[5] as enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron, et al.*, 489 U.S. 87 (1989), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). The court "is not required to adopt the number of hours submitted by an attorney in his fee application, but may make an independent determination of the reasonableness of the hours devoted to the case." *Boleman*, 355 B.R. at 553 (internal citations and quotations omitted). Further, while the "burden rests with the fee applicant to establish the reasonableness of the requested rate," *Pyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990), absent sufficient documentation to prove reasonableness, a court may in some circumstances rely on its own knowledge of the market to establish reasonableness, especially with respect to bankruptcy courts, which have developed "expertise" on attorney's fees issues, *see In re Botero-Paramo*, 483 Fed. App'x 779, 788-89 (4th Cir. 2012).

---

[5] These factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Serv. News Co.*, 898 F.2d at 965 (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)).

Here, the Bankruptcy Court applied the well-established lodestar method for calculating the attorney's fees award. *Id.* 577. In its Memorandum, it prefaced its analysis by noting that "the attorney's fees and costs claimed as damages, whether pre-litigation or post-litigation, must have been proximately caused by or reasonably incurred as a result of the violation of the automatic stay." *Id.* (quoting *In re Grine*, 439 B.R. at 471). In assessing what costs were reasonably incurred as a result of the violation of the automatic stay, the Bankruptcy Court considered the testimony and evidence introduced at the bench trial concerning attorney's fees,[6] the supplemental billing entries filed by Solomons One on December 15, 2014 and December 16, 2014,[7] and the extensive amount of evidence already in the record about the actions Solomons One had to take to defend against Donnelly's automatic stay violations.[8] *Id.* 577-82.

The Bankruptcy Court then categorized the types of work billed in relation to Donnelly's automatic stay violations into eight sets of tasks, addressing the billing entries for each task category one-by-one. *Id.* 579-82. In "scrutiz[ing] the billing entries" and "comput[ing] the

---

[6] At the bench trial, Solomons One called Erickson-File, one of its members, as a witness on the issue of damages – i.e., attorney's fees. She testified that Donnelly's actions required Solomons One to incur significant legal fees, both in defending against Donnelly's actions and in prosecuting the stay violations in Bankruptcy Court. *See* App. 328-30. Erickson-File confirmed that she was aware of the work that Solomons One's bankruptcy attorneys at Whiteford, Taylor & Preston had performed in connection with Donnelly's stay violations, and that she had reviewed the billing records for that work. *Id.* 330-31. At that point, the billing records from Whiteford, Taylor & Preston were entered into the record. Over Donnelly's objection, the billing records were admitted by the Bankruptcy Court "as a document which reflects the time and fees that the debtor's attorneys are seeking for representing the debtor in connection with" the automatic stay violations. *Id.* 333.

[7] Donnelly separately argues that the Bankruptcy Court's consideration of the Roberts Declaration (filed along with the supplemental billing entries on December 15, 2014) constituted an abuse of discretion. The Court will address this issue in Part IV.B, *infra*.

[8] It is also worth noting, as Solomons One argues, that even prior to the bench trial, the record itself reflected the extensive work undertaken by Solomons One's attorneys to defend against Donnelly's violations of the automatic stay. Reviewing the docket, it is apparent that Solomons One's attorneys had to research and prepare the adversary Complaint, App. 18-84, 581; defend against Donnelly's Motion to Dismiss the Adversary Complaint, or, in the Alternative, Motion for Summary Judgment, *id.* 581; research and prepare Solomon's One's Motion for Partial Summary Judgment on Count 8, *id.*; prepare for and attend a hearing on dismissal and summary judgment motions in the adversary proceeding, *id.* 582; and prepare for and attend the bench trial, *id.*

11

amount billed per task," the Bankruptcy Court "arrived at a blended rate" of $433.89 per hour, "which is to say $40,092.00 divided by 92.40 hours [the total amount billed for the automatic stay violation tasks, as reflected in the December 16 Filing]." *Id.* 579. It concluded that the number of hours, expended at this blended rate across all tasks, were "reasonable and necessary." *Id.* 579-82.

Having reviewed the Memorandum and record in this case, the Court concludes that the Bankruptcy Court did not abuse its discretion in conducting the above analysis and awarding $40,092.00 in attorney's fees to Solomons One. Indeed, it is clear from the Bankruptcy Court's thorough analysis that it did not blindly accept the billing entries submitted by Solomons One's counsel. Instead, it interrogated the entries line by line, analyzing the hours and fees spent on each category of tasks before concluding that the amounts were reasonable and necessary. The Bankruptcy Court was not "clearly wrong," nor has it "committed an error of law." *See Jones*, 777 F.3d at 675. The Court therefore sees no grounds by which to reverse the Bankruptcy Court's award, which the lower court clearly based on its "close and intimate knowledge of the efforts expended and the value of the services rendered." *See id.*

Donnelly nevertheless contends that the fee award was made in error because Solomons One failed to present evidence at trial to prove the "reasonableness" of the work and fees submitted to the Court in the billing entries. Appellant's Br. 18-23. Donnelly asserts that Solomons One should have called an expert witness, such as an accountant or an independent lawyer who could testify as to the "reasonableness" of the fees at issue. *Id.* 21. Without testimony as to reasonableness, Donnelly says, the Bankruptcy Court failed to satisfy a critical "first step" in its calculation of the appropriate award of attorney's fees. *Id.* 23.

12

The Court rejects this argument. A court "is itself an expert on the question of reasonableness and . . . may form an independent judgment either with or without the aid of witnesses as to value." *Beyond Sys., Inc. v. World Ave. USA, LLC*, No. CIV.A. PJM-08-921, 2011 WL 3419565, at *4 (D. Md. Aug. 1, 2011) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)); *see also CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000) (citing cases holding that a trial-level judge may rely on its own knowledge to establish the reasonableness of attorney's rates). Further, despite Donnelly's contention to the contrary, Solomons One's "failure to include affidavits from independent counsel [as to this issue] is not fatal." *Hairston v. Prince George's Cty.*, No. CIV.A. PJM-09-3431, 2011 WL 6000757, at *3 (D. Md. Nov. 29, 2011). Courts have recognized that bankruptcy courts, which assess attorney's fees applications on a frequent basis, are "particularly qualified" to determine the fairness and reasonableness of attorney's fees. *See Botero-Paramo*, 483 F. App'x at 789 (noting that "because nearly every case on a bankruptcy court's docket involves reviewing attorneys' fees and costs in the community, we find that bankruptcy courts are, in certain circumstances, particularly qualified to determine the reasonableness of fees based on their own expertise"). It was therefore not an abuse of discretion for the Bankruptcy Court to independently conclude that the amount billed by Whiteford, Taylor & Preston in connection with Donnelly's willful stay violation was reasonable.

Donnelly also seems to suggest that the Bankruptcy Court should have credited his testimony at trial that the attorneys for Whiteford, Taylor & Preston were "excessive" in their response to the automatic stay violations, incurring "unreasonable" and "unnecessary" fees. *See* Appellant's Br. 23-33. He claims that "[a] straightforward response to the procedural Notice of Substitution of Proper Party in the Circuit Court Action or a motion for appropriate relief . . .

would have sufficed." Appellant's Br. 24-25. The Court finds this argument meritless and, frankly, disingenuous. In reviewing the record, Donnelly's own conduct clearly invited the response by Whiteford, Taylor & Preston: Donnelly drafted and executed the Assignment, filed the Notice of Substitution, and despite receiving a letter asking for a withdrawal of the Notice of Substitution, chose to continue his own aggressive litigation strategy thus "requiring [Solomons One] to pursue legal action." App. 573. The Court agrees with the Bankruptcy Court that Donnelly's conduct was "highly questionable," *id.* 582, and accordingly, that the response of Solomons One's attorneys was not unreasonable or excessive.

For the above reasons, the Bankruptcy Court's analysis and calculation of reasonable attorney's fees was not "clearly wrong" and therefore will not be reversed. *See Best Md. Int'l, Inc.*, 565 F. App'x at 236.

**B.**

A related issue raised by Donnelly is whether the Bankruptcy Court abused its discretion in admitting the Roberts Declaration into evidence post-trial. The Court again concludes that the Bankruptcy Court did not abuse its discretion.

As noted above, Solomons One submitted the Roberts Declaration as a part of its Line Filing on December 15, 2014. App. 521-39. The Roberts Declaration was submitted by Solomons One in response to an exchange between the Bankruptcy Court and Solomons One's counsel at the bench trial. In this exchange, the Bankruptcy Court asked Solomons One's counsel for clarification on interpreting certain "general" billing entries, billing entries for time spent in which the description did not specifically mention the stay violations, and specifically how to determine what tasks were performed in connection with these entries. App. 380. Solomons One's counsel, Alan Lazerow, Esquire, could not answer all of the Bankruptcy Court's questions

14

because "admittedly, as an associate, [he was] not as involved in the billing as the partners." *Id.* 381. Mr. Lazerow, however, proposed filing a memorandum clarifying the way that fees were calculated in addition to filing a supplemental billing statement, which would include fees incurred in preparation for the bench trial. *Id.* 380-81. The Bankruptcy Court agreed to the additional filing, and Donnelly stated no objection to it during the hearing. *Id.*

Solomons One filed the eleven-paragraph Roberts Declaration on December 15, 2014. *Id.* 535-39. Paragraphs 8 through 11 note that "[g]eneral billing references to research, drafting and preparation" which did not specifically mention the stay violations were for the most part excluded from the billing entries with a few limited exceptions, which were explained. *Id.* 538-39. These paragraphs thus resolved the questions raised by the Bankruptcy Court during the hearing. The other seven paragraphs of the Roberts Declaration contain merely procedural facts which were already established at trial or could be readily adduced from the docket. *Id.* 535-37.

Donnelly argues on appeal that the Roberts Declaration constituted the "missing testimony" required at the bench trial on the issue of "proof of the reasonableness and necessity of the attorney's fees claimed as damages." Appellant's Br. 34. In Donnelly's view, the Roberts Declaration constitutes a "post-hearing attempt to cure the lack of evidence presented at trial" on the issue of reasonableness and necessity, and the Bankruptcy Court's acceptance of the Declaration as evidence of "reasonableness and necessity" was improper and highly prejudicial because Donnelly did not have the opportunity to cross-examine Roberts as a witness. *Id.* 34-35.

The Court disagrees.

As explained in the Memorandum, the Bankruptcy Court authorized the post-trial submissions, including the Roberts Declaration, during the bench trial. App. 583-84. Donnelly failed to object to the supplemental filings at any point during the exchange between the Court

15

and Mr. Lazerow on this issue. After Solomons One submitted the Roberts Declaration, Donnelly filed a Motion to Strike the Roberts Declaration and December 16 Filing, but asked for no other relief (such as, for example, a further hearing on the updated billing statements or an opportunity to cross-examine Roberts). *Id.* 584. The Court sees no error in the Bankruptcy Court's consideration of the Roberts Declaration, given Donnelly's failure to raise an objection to the supplemental information when it was permitted at the bench trial, or take appropriate steps to ask for further information from Solomons One's counsel. In this respect, the Court does not consider the Bankruptcy Court's consideration of the Roberts Declaration to have created "undue prejudice" to Donnelly. *See Levy*, 589 F.3d at 714.

Moreover, the Roberts Declaration does not contain any assertions or arguments regarding the reasonableness and necessity of the fees listed on the billing statements, despite Donnelly's contention to the contrary. *See generally* App. 535-39. That this testimony was a key piece of evidence on reasonableness is simply not true. *See* Appellee's Br. 31. And even if it did contain such testimony, the Bankruptcy Court engaged in its own *independent* assessment of reasonableness, as explained at length in Part IV.A, *supra*. Indeed, it employed its expertise on issues of attorney's fees without the need for additional evidence from Solomons One other than the billing entries and the established record of the steps taken to defend against Donnelly's stay violations. The Court thus finds the notion that the Roberts Declaration was "especially important or probative," *see Levy*, 589 F.3d at 714, dubious, at best.

For the above reasons, the Bankruptcy Court's decision to consider the post-trial Roberts Declaration was not an abuse of discretion.

## C.

The third and final issue Donnelly raises on appeal is whether the Bankruptcy Court erred in "relying on" Solomons One's pretrial memorandum in its determination of reasonable and necessary attorney's fees. The Court easily disposes of this issue.

First, although listed as an "issue" for the Court's consideration in the first page of his opening brief, Appellant's Br. 1, Donnelly does not present *any* argument in support of his position in his brief or other papers. Solomons One asserts that Donnelly's failure to do so constitutes a waiver of the issue, and the Court agrees. *See* Fed. R. App. P. 28(a) (listing the requirements for an appellate brief, which include a statement of the issues and argument for each issue); *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993) ("It is well settled that if an appellant fails to comply with [Fed. R. App. P. 28(a)] on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals.") (internal citations omitted); *United States v. Brown*, 404 F. App'x 665, 666 n.1 (3d Cir. 2010) ("Because an appellant's failure to present legal argument in support of an issue constitutes a waiver of that issue on appeal, we do not address the unargued question listed in the "Questions Presented for Review.").

Second, even if not waived, any argument on this issue would be meritless. The record contains no evidence that the Bankruptcy Court considered Solomons One's pretrial memorandum in awarding attorney's fees. The Court therefore does not see any grounds on which to conclude that the Bankruptcy Court could have abused its discretion with respect to the pretrial memorandum.

## V.

For the foregoing reasons, the Judgment of the Bankruptcy Court awarding Solomons One $40,092.00 in attorney's fees is **AFFIRMED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 12, 2016

18